UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No.:** _____

**WANDA ROSARIO RIVERA**, On Behalf of Herself and All Others Similarly Situated,

**Plaintiff,**

**V.**

**CORECIVIC OF TENNESSEE, LLC,**

**Defendant.**

**JURY TRIAL DEMANDED**

### PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT AND JURY DEMAND

1. Defendant, CoreCivic of Tennessee, LLC ("CoreCivic"), fails to properly compensate its non-exempt correctional and detention officers for all hours that they work. Specifically, CoreCivic: (1) required Plaintiff, Wanda Rosario Rivera ("Plaintiff"), and the proposed Class Members ("Class Members") to undergo lengthy security screenings without pay in violation of Colorado law; (2) required Plaintiff and the Class Members to undergo temperature screenings without pay in violation of Colorado law; (3) required Plaintiff and the Class Members to receive pre-shift supervisor briefings without pay in violation of Colorado law; (4) failed to provide Plaintiff and the Class Members mandatory rest breaks required by Colorado law; and (5) failed to compensate Plaintiff and the Class Members for those missed meal breaks in violation of Colorado law.

1

2.      Plaintiff worked for CoreCivic in Colorado and brings her claims under the Colorado Wage Claim Act, Colo. Rev. Stat. §§ 8-4-101, *et seq.* ("CWCA") and the applicable Colorado Overtime and Minimum Pay Standards ("COMPS") orders as a class action under Federal Rule of Civil Procedure 23 to remedy the illegal pay practices and other violations of Colorado law Plaintiff and the Class Members sustained as described above.

## JURISDICTION AND VENUE

3.      The Court has original subject matter jurisdiction over Plaintiff's state law claims pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000. Further, this is a class action in which there are more than 100 Class Members, and at least one of the Class Members is a citizen of a state different than CoreCivic.

4.      The Court has personal jurisdiction over CoreCivic because it has purposefully availed itself of the privileges of conducting business activities in the State of Colorado and has established minimum contacts sufficient to confer personal jurisdiction. CoreCivic does business in Colorado, employs workers in Colorado, and the violations of the law forming the basis of this lawsuit occurred in Colorado. Therefore, the assumption of jurisdiction over CoreCivic does not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process. CoreCivic continues to have continuous and systematic contacts with the State of Colorado sufficient to establish general jurisdiction over it.

5.      Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the acts or omissions giving rise to Plaintiff's and the Class Members' claims took place in this district.

**PARTIES**

6.     Plaintiff is an individual residing in Pueblo, Colorado. Plaintiff worked for CoreCivic as a correctional officer during the class period at CoreCivic's Olney Springs, Colorado location in Crowley County.

7.     The Class Members are all current and former correctional and detention officers paid on an hourly rate basis and who worked in Colorado for CoreCivic during at least one week during the three year period before thefiling of this complaint to the present.

8.     CoreCivic of Tennessee, LLC is a foreign limited liability company organized under the laws of Tennessee. CoreCivic's principal place of business is 5501 Virginia Way, Suite 110, Brentwood, Tennessee 37027. CoreCivic may be served with process by serving its registered agent, CT Corporation System, 770 E. Arapahoe Road, Suite 220, Centennial, Colorado 80112.

**COVERAGE**

9.     At all material times, CoreCivic has been an employer within the meaning of CRS § 8-4-101(6) and the applicable COMPS Orders.

10.    Specifically, CoreCivic is a service company within the meaning of the applicable COMPS Orders because it is a business or enterprise that generates 50 percentor more of its sales from services offered to the public.

11.    Further, CoreCivic is an employer as defined by C.R.S. 8-4-101(6) and COMPS Orders #36 and #37, Rule 1.6, including their predecessors in effect at all material times.

12.    At all material times, Plaintiff and the Class Members were employees of CoreCivic with the meaning of C.R.S. § 8-104-101(5) and COMPS Orders #36 and #37, Rule 1.5, including their predecessors in effect at all material times.

3

## FACTS

13.     CoreCivic is one of the largest private prison companies in the United States. CoreCivic operates prisons, detention centers, correctional facilities, transitional centers, and residential reentry centers all across the United States, including in Colorado. CoreCivic has employed hundreds and potentially thousands of correctional and detention officers in Colorado over the last three years.

14.     Plaintiff worked as an hourly, non-exempt, correctional officer for CoreCivic at its Crowley County Correctional Facility in Olney Springs, Colorado from approximately December, 2019 to June, 2020.

15.     CoreCivic's correctional and detention officers manage and oversee the inmate and detainee population at CoreCivic's facilities.

16.     CoreCivic's correctional and detention officers are responsible for the custody and discipline of inmates and detainees held at CoreCivic's correctional and detention centers.

17.     CoreCivic's correctional and detention officers search for contraband, provide security, count, feed, and supervise detainees and inmates.

18.     Plaintiff and the Class Members are all correctional and detention officers who perform these duties as CoreCivic's employees.

19.     CoreCivic's facilities are heavily secured by gates, locked doors, and metal detectors.

20.     From the beginning of her employment throughout her tenure, when Plaintiff arrived at the facility to begin her shift, CoreCivic required her to undergo a security screening prior to entering the facility. Including the wait, the process could last several minutes.

21. Starting in March of 2020, CoreCivic also required Plaintiff to submit to a temperature screening and answer health and symptom-related questions screenings every time she began a shift in addition to the security screening.

22. Beginning in March of 2020, Plaintiff first submitted to a temperature screening and answered questions related to COVID symptoms and potential exposure.

23. After completing the temperature screening, Plaintiff then submitted to a lengthy security screening.

24. Plaintiff was required to: empty her pockets; remove her shoes, belt, coat, or jacket; and remove any metal objects and other personal effects from her person for inspection. And any purse, bag, or tote had to go through metal detectors.

25. Plaintiff walked through a metal detector and submitted to further search and inspection if any metal objects were detected.

26. Plaintiff then gathered her personal effects and put back on any clothing items she removed.

27. Although the temperature screening only began in approximately March of 2020, the security screening described above occurred before every shift during the entirety of Plaintiff's employment with CoreCivic.

28. After Plaintiff completed the security screening, gathered her personal effects, and put back on any clothing items she removed, a supervisor briefed her on current issues in the facility, any incidents that may have occurred during the previous shift, and assigned her duty station assignment for the day.

29. Plaintiff then went through security doors before arriving at her duty station which could be at any of a number of buildings on the CoreCivic campus.

30. CoreCivic required Plaintiff to submit to the temperature and security screenings and briefings described above before she was able to clock-in for payroll purposes.

31. The temperature and security screenings and briefings last 20 minutes or more because of long lines and the requirement to remove shoes, belts, outerwear, etc.

32. Like Plaintiff, when the Class Members arrive at a facility to begin their shifts CoreCivic requires them to undergo a security screening. Including the wait, the process can last several minutes.

33. Like Plaintiff, starting in approximately March of 2020, CoreCivic required the Class Members to also submit to temperature and security screening immediately prior to the security screening.

34. Like Plaintiff, CoreCivic required the Class Members to also submit to these screenings every time they begin a shift.

35. As of approximately March of 2020, the Class Members must first submit to a temperature screening and answer questions related to COVID symptoms and potential exposure.

36. After completing the temperature screening, the Class Members then must submit to a lengthy security screening.

37. The Class Members must: empty their pockets; remove their shoes, belts, coats, or jackets; and remove any metal objects and other personal effects from their person for inspection. And purses, bags, or totes must go through metal detectors.

6

38. The Class Members walk through a metal detector and submit to further search and inspection if any metal objects are detected.

39. The Class Members then gather their personal effects and put back on any clothing items they removed.

40. As with Plaintiff, although the temperature screening only began in approximately March of 2020, the security screening described above occurred before every shift during the entirety of Class Members' employment with CoreCivic.

41. After the Class Members complete the security screening, gather their personal effects, and put back on any clothing items they removed, a supervisor briefs them on current issues in the facility, any incidents that may have occurred during the previous shift, and assigns them their duty station assignment for the day.

42. The Class Members then go through security doors before arriving at their duty station which may be at any of a number of buildings on the CoreCivic campus.

43. CoreCivic requires the Class Members to submit to the temperature and security screenings and briefings described above before they are able to clock-in for payroll purposes.

44. The temperature and security screenings and briefings last 20 minutes or more because of long lines and the requirement to remove shoes, belts, outerwear, emptying pockets, etc.

45. CoreCivic does not compensate Plaintiff and the Class Members for the time they spend submitting to temperature and security screenings and briefings.

46. This is despite the fact that Colorado law requires CoreCivic to compensate Plaintiff and the Class Members for the time they spend submitting to temperature and security

7

screenings and briefings.

47. The temperature and security screenings and briefings are necessary and integral to the principal work performed by Plaintiff and the Class Members on behalf of CoreCivic.

48. CoreCivic requires Plaintiff and the Class Members to submit to temperature and security screenings and briefings on CoreCivic's premises

49. CoreCivic controls and mandates the temperature and security screenings and briefings.

50. Plaintiff and the Class Members submit to the temperature and security screenings and briefings primarily for CoreCivic's benefit.

51. CoreCivic requires Plaintiff and the Class Members to undergo these screenings and briefings for the purposes of overall safety in the prison, to prevent the correctional and detention officers from inadvertently or intentionally bringing contraband into the prison centers, to Plaintiff and the Class Members from inadvertently spreading infections throughout the facility, and to prepare Plaintiff and the Class Members officers for their shift.

52. CoreCivic could not have eliminated the screenings without impairing Plaintiff's and the Class Members' abilities to perform their duties properly. If CoreCivic did not conduct the security screenings, Plaintiff and the Class Members could inadvertently or intentionally bring weapons or other contraband into the facility, making the facility less secure and impairing the correctional and detention officers Plaintiff's and the Class Members' abilities to provide security, supervise the inmates/detainees, and search for contraband.

53. Additionally, preventing weapons and other contraband from entering the prison was an essential element of Plaintiff's and the Class Members' job duties with the ultimate purpose

to maintain a secure prison environment.

54. Pursuant to COMPS Orders # 36 and #37, Rule 1.9, "Time Worked" under Colorado law is specifically defined to include time spent completing and waiting for "security or safety screening[s]" like the temperature and security screenings CoreCivic requires of Plaintiff and the Class Members.

55. Once Plaintiff completed the security and temperature screenings and briefings and was actually able to clock in for her shift, Plaintiff typically worked in excess of 12 hours a day, 5 days a week, and sometimes up to 90 or more hours a week each workweek.

56. Therefore, any time Plaintiff spent submitting to the security and temperature screenings typically amounted to unpaid working hours in excess for forty hours in a workweek.

57. What's more, during her shifts Plaintiff was unable to take rest periods mandated by Colorado law.

58. Either CoreCivic failed to provide Plaintiff rest breaks at all, or when Plaintiff was able to take a rest break it was interrupted and Plaintiff was not completely relieved of all duties for the entirety of her rest break.

59. Like Plaintiff, once the Class Members completed the security and temperature screenings and briefings and were actually able to clock in for their shifts, the Class Members typically worked long shifts in excess of 12 hours a day, 5 days a week, and sometimes up to 90 or more hours a week each workweek.

60. Therefore, any time the Class Members spent submitting to the security and temperature screenings and supervisor briefings amounted to unpaid working hours in excess for forty hours in a workweek.

61. Like Plaintiff, during their shifts the Class Members were unable to take rest periods mandated by Colorado law.

62. Either CoreCivic failed to provide the Class Members rest breaks at all, or when they were able to take a rest breaks they were interrupted and the Class Members were not completely relieved of all duties for the entirety of their rest breaks.

63. Under COMPS Orders #36 and #37, Rule 5.2, and their predecessors in effect at all material times, every employer in Colorado shall authorize and permit a compensated 10-minute rest period for each 4 hours of work or major fractions thereof.

64. CoreCivic, however, failed to permit Plaintiff and the Class Members to take their rest breaks.

65. Under COMPS Orders #36 and # 37 Rule 5.2.4, and their predecessors in effect at all material times, CoreCivic is required to compensate Plaintiff and the Class Members for the full 10-minute rest break at their legally required rate.

66. Again, because of their typical work schedules, rest breaks Plaintiff and the Class Members were unable to take, in whole or in part, typically amounted to unpaid working hours in excess for forty hours in a workweek.

67. Plaintiff and the Class Members were non-exempt employees.

68. Plaintiff and the Class Members were paid on an hourly rate basis.

69. When Plaintiff and the Class Members worked more than 12 hours in a day, 12 consecutive hours, or 40 hours in a workweek, they were entitled to overtime pay.

70. Due to the unpaid temperature and security screenings, supervisor briefings, and interrupted or missed breaks, Plaintiff and the Class Members were not paid for all time worked

each day and workweek and are owed significant unpaid wages.

71. CoreCivic's method of paying Plaintiff and the Class Members in violation of Colorado law is willful and, likewise, is not based on a good faith and reasonable belief that CoreCivic is in compliance with Colorado law.

72. CoreCivic knows it must pay for all time worked, including for temperature and security screenings, supervisor briefings, and interrupted or missed breaks, but intentionally and/or recklessly fails to do so.

## RULE 23 CLASS ALLEGATIONS

73. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

74. Plaintiff brings her claims as a Rule 23 class action on behalf of the following Class Members:

> **All current and former correctional and detention officers who worked for CoreCivic in Colorado and were paid on an hourly basis at any time during the three year period prior to the date of filing of this case through its resolution.**

75. This action has been brought and may properly be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

76. <u>Numerosity</u>: The Class Members are so numerous that their individual joinder is impractical; indeed, the Class Members number well in excess of 100. This volume makes bringing the claims of each individual Class Member before this Court impracticable. Likewise, joining each individual Class Member as a plaintiff in this action is impracticable. Furthermore, the Class Members' identities are readily discernable from CoreCivic's records, as will the compensation paid to each of them. As such, a class action is a reasonable and practical means

11

of resolving these claims. To require individual actions would prejudice the Class Members and CoreCivic.

77. <u>Commonality</u>: There are questions of law and fact common to Plaintiff and the Class Members that predominate over any questions affecting only individual Class Members. These common questions of law and fact include, but are not limited to:

    i. Whether CoreCivic failed to pay Plaintiff and the Class Members for all hours worked;

    ii. Whether CoreCivic paid Plaintiff and the Class Members on an hourly basis;

    iii. Whether CoreCivic failed to keep accurate records of Plaintiff's and the Class Members' hours of work and wages;

    iv. Whether CoreCivic failed to pay Plaintiff and the Class Members at an overtime rate for all hours worked in excess of forty in a workweek;

    v. Whether CoreCivic required Plaintiff and the Class Members to submit to unpaid temperature screenings;

    vi. Whether CoreCivic required Plaintiff and the Class Members to submit to unpaid security screenings;

    vii. Whether CoreCivic required Plaintiff and the Class Members to submit to unpaid supervisor briefings;

    viii. Whether CoreCivic failed to authorize and permit Plaintiff and the Class Members to take bona fide and uninterrupted rest breaks to which they were entitled under Colorado law;

    ix.    Whether CoreCivic failed to compensate Plaintiff and the Class Members for work performed off-the-clock at a rate of one and one-half times their regular rate of pay for hours worked in excess of forty in a workweek in violation of Colorado law;

    x.    Whether CoreCivic failed to provide Plaintiff and Class Members with timely, accurate itemized wage statements in violation of Colorado law;

    xi.    Whether Plaintiff and Class Members are entitled to civil and statutory penalties;

    xii.    Whether Plaintiff and the Class Members are entitled to liquidated damages;

    xiii.    The proper formula for calculating restitution, damages and penalties CoreCivic owes to Plaintiff and the Class Members as alleged herein; and

    xiv.    Whether CoreCivic's acted "willfully" as that term is understood under Colorado wage and hour law.

78. <u>Typicality</u>: Plaintiff's claims are typical of the Class Members' claims. CoreCivic's common course of conduct in violation of Colorado law as alleged herein caused Plaintiff and the Class Members to sustain the same or similar injuries and damages. Plaintiff's claims are thereby representative of and co-extensive with the Class Members' claims.

79. <u>Adequacy of Representation</u>:  Plaintiff does not have any conflicts of interest with other Class Members and will prosecute the case vigorously on behalf of the Class Members. Counsel representing Plaintiff are competent and experienced in litigating complex cases and large class actions, including wage and hour cases. Plaintiff will fairly and adequately represent and

protect the interests of the Class Members.

80.  <u>Superiority of Class Action</u>:  A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all proposed Class Members is not practicable, and questions of law and fact common to Plaintiff and the Class Members predominate over any questions affecting only individual Class Members. Each proposed Class Members has been damaged and is entitled to recovery by reason of CoreCivic's illegal policies and/or practices. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

81.  In the alternative, a class may be certified because the prosecution of separate actions by the individual Class Members would create a risk of inconsistent or varying adjudication with respect to individual Class Members which would establish incompatible standards of conduct for CoreCivic.

82.  If each individual Class Members was required to file an individual lawsuit, CoreCivic would necessarily gain an unconscionable advantage because CoreCivic would be able to exploit and overwhelm each Class Members' limited resources with CoreCivic's vastly superior financial legal resources.

83.  Requiring each individual Class Member to pursue an individual remedy would also discourage the assertion of lawful claims by the Class Members who would be disinclined to pursue these claims against CoreCivic because of an appreciable and justifiable fear of retaliation and permanent damage to their lives, careers and well-being.

## FIRST CLAIM FOR RELIEF
## FAILURE TO PAY OVERTIME

84. Plaintiff incorporates all allegations contained in the foregoing paragraphs.

85. At all relevant times, CoreCivic has been, and continues to be, an "employer" within the meaning of the CWCA. At all relevant times, CoreCivic has employed and continues to employ, "employees," including Plaintiff and the Class Members, within the meaning the CWCA.

86. As a result of the foregoing conduct, as alleged, CoreCivic has failed to pay wages due under the CWCA and the Colorado Minimum Wage Act, as implemented by the COMPS Orders, thereby violating, and continuing to violate, the CWCA. These violations were committed knowingly, willfully and with reckless disregard of applicable law.

87. As a result of the foregoing conduct, as alleged, CoreCivic has failed to pay overtime wages due under Colorado law. Plaintiff and the Class Members were entitled to overtime wages at the rate of time and one half their regular rates of pay when they worked more than 12 hours in a day, more than 12 consecutive hours, or more than 40 hours in a week.

88. Plaintiff, on behalf of herself and on behalf of the Class Members, hereby demands payment as contemplated by the CWCA in an amount sufficient to reimburse Plaintiff and the Class Members for all unpaid overtime wages, costs, expenses, attorney's fees, and interest.

## SECOND CLAIM FOR RELIEF
## REST PERIOD VIOLATIONS

89. Plaintiff incorporates all allegations contained in the foregoing paragraphs.

90. Pursuant to the applicable COMPS orders, every employer in Colorado is required to provide each employee, for each segment of four hours of work, a compensated rest period of

15

not less than 10 continuous minutes during which the employee is relieved of all duties, without deduction from the employee's pay.

91. Plaintiff and the Class Members generally worked shifts lasting 12 or more hours per shift. As discussed above, Plaintiff and Class Members were subjected to interruption and were consistently denied requisite rest periods.

92. Plaintiff and Class Members are entitled to compensation for all missed rest periods in violation of the rest break requirements provided by Colorado law.

93. Wherefore, Plaintiff and the putative class request relief as hereinafter provided.

## RELIEF SOUGHT

94. Plaintiff and the Class Members are entitled to recover their unpaid overtime wage compensation.

95. Plaintiff and the Class Members are entitled to recover back wages for overtime pay at one-and-one-half times their regular rates of pay for their off-the-clock temperature screenings, off-the-clock security screenings, off-the-clock supervisor briefings, and missed rest periods, for each day worked during a workweek in which they worked more than 40 hours in a workweek.

96. Plaintiff and the Class Members are entitled to recover back wages for minimum wages at their regular rates of pay for their off-the-clock temperature screenings, off-the-clock security screenings, off-the-clock supervisor briefings, and missed rest periods, for each day worked during a workweek in which they worked fewer than 40 hours in a workweek.

97. Plaintiff and the Class Members are entitled to recover costs and a reasonable sum for attorney fees, pursuant to C.R.S. § 8-4-110.

98. Plaintiff and the Class Members are entitled to declaratory relief stating Defendant's actions as described herein were and are unlawful.

## JURY DEMAND

99. Plaintiff and Class Members hereby demand trial by jury on all issues.

## PRAYER

100. For these reasons, Plaintiff and the Class Members respectfully request that judgment be entered in their favor awarding the following relief:

  i. An order preventing Defendant from retaliating in any way against Plaintiff the Class Members who joins or elects not to opt-out of the present suit based on their pursuit of these claims alleged herein;
  ii. An order certifying this case as a Class Action under Rule 23 of the Federal Rules of Civil Procedure;
  iii. An order finding that CoreCivic violated Colorado law;
  iv. All unpaid overtime wages due under Colorado law;
  v. All statutory penalty wages due under Colorado law;
  vi. All attorneys' fees, costs and disbursements as provided by Colorado law;
  vii. For an order awarding Plaintiff and the Class Members pre- and post-judgment interest at the highest rates allowed by law;
  viii. Such other and further relief to which Plaintiff and the Class Members may be entitled at law or in equity.

                                             Respectfully submitted,

Dated: September 28, 2021.                */s/ Carolyn H. Cottrell*
                                                               Carolyn H. Cottrell
                                                               California State Bar No.: 166977
                                                               SCHNEIDER WALLACE
                                                               COTTRELL KONECKY LLP
                                                               2000 Powell St, Suite 1400
                                                               Emeryville, California 94608
                                                               Tel:: (415) 421-7100; Fax: (415) 421-7105
                                                               ccottrell@schneiderwallace.com
                                                               *Lead Attorney for Plaintiff*

                                                               Michael K. Burke
                                                               Texas State Bar No.: 24012359
                                                               SCHNEIDER WALLACE
                                                               COTTRELL KONECKY LLP
                                                               3700 Buffalo Speedway, Suite 300
                                                               Houston, Texas 77098
                                                               Tel: (713) 338-2560; Fax: (415) 421-7105
                                                               mburke@schneiderwallace.com
                                                               *Of Counsel for Plaintiff*